Joshua Trigsted
Oregon State Bar ID Number 06531
Weisberg & Meyers, LLC
5025 North Central Ave. #602
Phoenix, AZ 85012
602 445-9819, ext. # 216
866 565 1327 facsimile
jtrigsted@attorneysforconsumers.com
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| **Bruce Dunn**, <br> Plaintiff, <br> vs. <br> **Derrick E. McGavic, P.C.,** <br> Defendant | Case No.: **09-3035-PA** <br><br> **PLAINTIFF'S REPLY MEMORANDUM OF LAW** <br><br> FAIR DEBT COLLECTION PRACTICES ACT (15 USC 1692) <br><br> DEMAND FOR JURY TRIAL |

## PLAINTIFF'S REPLY MEMORANDUM OF LAW

Plaintiff, BRUCE DUNN ("Plaintiff"), by and through his attorneys, Weisberg & Meyers, LLC., in accord with this Court's request, hereby submits his Reply Memorandum of Law in Support of Judgment against Defendant, DERRICK E. MCGAVIC, P.C., ("Defendant"). In support thereof, Plaintiff states as follows:

**I. DEFENDANT'S CONTENTION THAT THE SUBJECT COMMUNICATION *SUBSTANTIALLY COMPLIES* WITH CERTAIN FEDERAL COURT OPINIONS IS UNAVAILING WHERE AT LEAST TWO (2) CIRCUIT COURTS HAVE WARNED THAT DEBT COLLECTORS SHOULD DEPART FROM SUGGESTED LANGUAGE AT THEIR OWN RISK.**

Defendant, through its initial brief to this Court ("Brief"), asserts that it is entitled to judgment as a matter of law for reason that the subject letter, the result of from which Plaintiff alleges violation of the Fair Debt Collections Practices Act ("FDCPA"), "is carefully tailored to comply with the lessons provided from other courts which have dealt with these issues."  (See

Brief at 1). In support of its contention Defendant cites to several opinions from federal district courts, as well as courts of appeal, in effort to demonstrate what it contends to be *substantial compliance* with the law. In particular, Defendant, throughout its Brief, employs phrases such as "nearly identical," "tracks closely," and "key to these cases," but fails to draw the attention of this Court to pertinent dissimilarities to cited opinions that give rise to Plaintiff's cause of action.

Indeed, the FDCPA is a strict liability statute, to be interpreted liberally in accord with its remedial purpose, and against the backdrop of the "least sophisticated consumer" standard. In other words, the FDCPA was not "made for the protection of experts, but for the public - that vast multitude which includes the ignorant, the unthinking, and the credulous, and the fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." *Jeter v. Credit Bureau, Inc.,* 760 F. 2d 1168 (11th Cir. 1985), citing *Florence Mfg. Co. v. J.C. Dowd & Co.*, 178 F. 73 (2d Cir. 1910); *Federal Trade Commission v. Standard Education Soc.,* 302 U.S. 112 (1937). Stated otherwise, merely because skilled legal counsel may cleverly employ argument purportedly reconciling certain facts, and distinguishing others, the least sophisticated consumer is neither likely, nor required to contrive the same wit that so often underlies the legal profession.

Simply, language that "tracks closely" communication that courts have deemed proper is by its very nature divergent from that which courts have explicitly recognized as compliant. Vernacular which is "nearly identical" to expression regarded as proper, is necessarily distinguishable from conduct that does not give rise to violation. And, writings purported to encompass the "key to [] cases" do not, as a matter of law, do so when viewed from the objective standard of an individual wholly unfamiliar with the law.

Of the utmost significance, federal courts of appeal have weighed in on argument comparable to Defendant's implicit suggestion that substantial compliance particular to claims akin to that which Plaintiff alleges insulates Defendant from liability. In particular, the Seventh Circuit, as well as the Second Circuit, have provided detailed guidance to debt collectors on how to avoid liability specifically regarding the precise issues before this Court. Considering the same, and for reason that Defendant openly admits that "it is readily apparent that Defendant was aware of the case law addressing the types of claims which Plaintiff has brought," Defendant's contentions are particularly objectionable. (See Brief at 10).

    **A.**    **The Language Employed By Defendant's Communication To Plaintiff Differs From, And Confers The Very Effect That The Seventh Circuit Intended To Avoid, In Suggesting Explicit "Safe-Harbor" Language To Debt Collectors In Attempt To Provide Guidance To Avoid Liability.**

The Seventh Circuit, in *Bartlett v. Heibl*, noted that a defendant need not draft correspondence that expressly contradicts statutory notice requirements to violate the FDCPA, but rather only that a defendant send a communication which is difficult to understand. *Bartlett v. Heibl*, 128 F. 3d 497 (7th Cir. 1997). In particular, the Seventh Circuit likened violative communication to "static or cross-talk [that] can make a telephone communication hard to understand even though the message is not being contradicted in any way." *Id*. at 500. The Seventh Circuit additionally noted that "[t]he cases that find the statute violated generally involve neither logical inconsistencies (that is, denials of the consumer rights that the dunning letter is required to disclose) nor the kind of literal 'overshadowing' involved in a fine-print, or faint-print, or confusing-typeface case." *Id*.[1] Continuing, the Seventh Circuit, in *Bartlett v.*

---

[1] Contrary to the Seventh Circuit's finding, Defendant devotes argument in its Brief to the simple notion that its letter, sent to Plaintiff in effort to collect the subject debt, does not violate the FDCPA merely because of the appropriate use of typeface. Specifically, Defendant goes so far as to state that its letter is compliant merely because "there is no visual evidence of the language explaining the possibility of legal action." (See Brief at 6).

3

*Heibl*, opines: "It would be better if the courts just said that the unsophisticated consumer is to be protected against confusion, whatever form it takes. A contradiction is just one means of inducing confusion; 'overshadowing' is just another; and the most common is a third, the failure to explain an *apparent* though not actual contradiction .... " *Id*. at 501 (emphasis in original).

Of great implication, the Seventh Circuit, in response to argument mimicking that which Defendant presents to this Court, drafted a suggested "safe-harbor" letter that debt collectors in Defendant's position could use to avoid liability particular to the very issue before this Court:

> If you want to resolve this matter without a lawsuit, you must, within one week of the date of this letter, [take specific actions]. If you do neither of these things, I will be entitled to file a lawsuit against you, for the collection of this debt, when the week is over.
>
> Federal law gives you thirty days after you receive this letter to dispute the validity of the debt or any part of it. If you don't dispute it within that period, I'll assume that it's valid. If you do dispute it-- by notifying me in writing to that effect--I will, as required by the law, obtain and mail to you proof of the debt. And if, within the same period, you request in writing the name and address of your original creditor, if the original creditor is different from the current creditor ... , I will furnish you with that information too.
>
> The law does not require me to wait until the end of the thirty-day period before suing you to collect this debt. **If, however, you request proof of the debt or the name and address of the original creditor within the thirty-day period that begins with your receipt of this letter, <u>the law requires me to suspend my efforts (through litigation or otherwise) to collect the debt until I mail the requested information to you.</u>**

*Bartlett v. Heibl*, 128 F.3d 497 (7th Cir. 1997) (emphasis added).

Opposing, Defendant's correspondence, which it describes through its Brief as "nearly identical to the so called 'safe-harbor' language offered by the Seventh Circuit in *Bartlett v. Heibl*, 128 F. 3d 497 (1997)," reads in part:

> UNLESS THE CONSUMER, within the thirty days after receipt of this notice, disputes the validity of the debt, or any portion thereof,

> the debt will be assumed to be valid by this "debt collector". If you notify us in writing within that thirty-day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of the judgment against you, and a copy of such verification or judgment will be mailed to you by us. **If you request in writing within the same thirty-day period, we will provide you with the name and address of the original creditor, if different form the current creditor. The law <u>does not require us to wait until the end of the thirty day period before proceeding with suit</u>**.

(See Exhibit "A" to Plaintiff's Memorandum of Law in Support of Judgment ("Memorandum").)

Not only does the language utilized by Defendant fail to qualify as "nearly identical" to that suggested by the Seventh Circuit in *Bartlett v. Heibl*, but the manner in which Defendant's correspondence is drafted confers upon the least sophisticated consumer the very opposite effect intended by the Seventh Circuit's suggested notice as outlined in *Bartlett v. Heibl*. Defendant indeed fails to heed its own advice, that "the net effect of the juxtaposition" of statements" is "as bad as an outright contradiction," in altering, cutting, and pasting to and from the Seventh Circuit's "safe-harbor" letter under the guise of substantial compliance. Described by the Seventh Circuit as "legal gibberish," Defendant's letter which it ironically claims to "track closely" language suggested by the Seventh Circuit, creates the very "static or cross-talk" that makes a communication difficult to understand, by strategically re-organizing and re-wording the language of the Seventh Circuit's suggested letter, in effort to capitalize on its what it now argues to be nothing other than *substantial compliance*.

Compelling, the Seventh Circuit explicitly concluded its opinion in *Bartlett v. Heigl* by warning: "We cannot require debt collectors to use 'our' form. But of course if they depart from it, they do so at their risk." *Bartlett v. Heibl*, 128 F. 3d at 502.

**B.     The Language Contained Within Defendant's Letter To Plaintiff Conveys To Consumers The Very Impression That The Second Circuit Warned Debt Collectors Of In *Savino V. Computer Credit, Inc*.**

The second Circuit, in *Savino v. Computer Credit, Inc.,* stated that "when determining whether Section 1962g has been violated, courts use 'an objective standard, measured by how the 'least sophisticated consumer' would interpret the notice received from the debt collector.'" *Savino v. Computer Credit, Inc.,* 164 F. 3d 81 (2d Cir. 1998), quoting *Russell v. Equifax A.R.S.,* 74 F.3d 30, 34 (2d Cir.1996). "When a notice contains language that 'overshadows or contradicts' other language informing a consumer of her rights, it violates the Act." *Id.*, citing *Graziano v. Harrison,* 950 F.2d 107 (3d Cir.1991)). "[**T**]**he juxtaposition of two inconsistent statements renders the notice invalid under § 1692g**." *Id.* (emphasis added). A debt collection notice is overshadowing or contradictory if it fails to convey the validation information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to her rights. *Id.*

Similar to the Seventh Circuit in *Bartlett v. Heibl*, the Second Circuit provided suggested language to be used by debt collectors to avoid liability for claims identical to those before this Court. In particular, the Second Circuit suggested that debt collectors include in communications:

> Our demand for immediate payment does not eliminate your right to dispute this debt within thirty days of receipt of this notice. **If you choose to do so, we are required by law to cease our collection efforts until we have mailed that information to you.** Your rights are described on the reverse side of this notice.

*Savino v. Computer Credit, Inc.,* 164 F. 3d at 86.

Defendant, however, includes language in its letter mailed to Plaintiff bestowing upon consumers the exact opposite effect of that suggested by the Second Circuit:

> **If you request in writing within the same thirty-day period, we will provide you with the name and address of the original creditor, if different form the current creditor. The law <u>does not require us to wait until the end of the thirty day period before proceeding with suit</u>**.

(See Exhibit "A" to Memorandum).

Like Defendant's failure to utilize language suggested by the Seventh Circuit, Defendant, in drafting and sending its letter to Plaintiff in effort to collect the subject debt, departs from the "safe-harbor" notice suggested by the Second Circuit *Savino v. Computer Credit, Inc*. As unequivocally detailed by the Seventh Circuit in *Bartlett v. Heibl*, Defendant does so at its own risk. Again, of momentous repercussion to the matter before this Court, Defendant concedes that "it is readily apparent that Defendant was aware of the case law addressing the types of claims which Plaintiff has brought." (See Brief at 10). In light of such case law, particularly that which emphasizes the consequences of juxtaposition of inconsistent statements, Defendant's submission that Plaintiff "is barking up the wrong tree" seems misplaced.

II. **DEFENDANT'S CITATION TO BROAD CONTENTIONS OF LAW NOTED BY FEDERAL COURTS SPANNING THE COUNTRY IS UNPERSUASIVE WHERE DEFENDANT FAILS TO CALL ATTENTION TO FUNDAMENTAL FACTUAL DISTINCTIONS UPON WHICH CITED OPINIONS REST.**

A. **Defendant Fails To Point Out That The Language Included In The Letter At Issue In *Terran v. Kaplan* References The *Possibility* That The Defendant *May Recommend* That Its Client Proceed With Legal Action, While Defendant's Letter Explicitly Threatens A Lawsuit Within The Thirty (30) Dispute And Validation Period.**

Defendant erroneously states through its Brief that "the Ninth Circuit will not find a violation where only a *request* for prompt payment is made within the 30 day period."[2] (See

---

[2] The Ninth Circuit, in *Terran v. Kaplan*, in fact includes a list of citations in contravention of Defendant's suggestion. *Terran v. Kaplan*, 109 F. 3d 1428 (9th Cir. 1997), citing *Russell v. Equifax A.R.S.,* 74 F. 3d 30 (2d Cir. 1996) (concluding that additional language overshadows and conflicts with the validation notice because least sophisticated debtor could understand letter to state that "to take any course of action other than payment . . . within ten days, . . . would permanently affect [the debtor's] credit record"); *Grazziano v. Harrison*, 950 F. 2d 107 (3d Cir.

Brief at 4) (emphasis in original).  In support of its conclusion Defendant cites to *Terran v. Kaplan*.  Defendant quotes from the Ninth Circuit's opinion in *Terran v. Kaplan* language from the letter at issue in that matter: "Unless an immediate telephone call is made to J SCOTT, a collection assistant of our office at (602) 258-8433, we may find it necessary to recommend to our client that they proceed with legal action."  (See Brief at 4).  Defendant goes on to state that the Ninth Circuit rejected the plaintiff's claim in *Terran v. Kaplan*, and likens the subject letter in the instant matter to that analyzed in *Terran v. Kaplan*.  In doing so, Defendant includes in its Brief a statement from the opinion of the Ninth Circuit:

> The request that the debtor telephone the collection agency does not contradict the admonition that the debtor has thirty days to contest the validity of the debt.  This language simply encourages the debtor to communicate with the debt collection agency.  It does not threaten or encourage the least sophisticated debtor to waive his statutory right to challenge the validity of the debt.

(See Brief at 4), quoting *Terran v. Kaplan*, 109 F. 3d 1428 (9th Cir. 1997).

Significant, the Ninth Circuit in *Terran v. Kaplan* makes clear that it found no violation specific to the letter at issue because the "language simply encourages the debtor to communicate with the debt collection agency."  In particular, the letter at issue in *Terran v. Kaplan* requests nothing more than a telephone call.  *Terran v. Kaplan*, 109 F. 3d at 1434.  Interesting, Defendant fails to call attention to the same in excluding from the quotation included in its Brief the sentence that immediately precedes the quoted portion of the Ninth Circuit's opinion: "[The letter] merely requests a phone call."  *Id.*  What's more, the letter at issue in *Terran v. Kaplan* does not explicitly threaten litigation, but merely states that in the absence of the requested

---

1991) (**holding that there was a "reasonable probability that the least sophisticated debtor, faced with a demand for payment within ten days and a threat of immediate legal action if payment is not made in that time, would be induced to overlook his statutory right to dispute the debt within thirty days**");

telephone call "we may find it necessary to recommend to our client that they proceed with legal action." *Id.* (emphasis added).

Contrary, Defendant's letter reads in part: "**If our client instructs us to file suit immediately, we may do so even if the thirty (30) day dispute and validation periods described below have not expired yet**." (See Exhibit "A" Memorandum). Simply, where the language included in the letter at issue in *Terran v. Kaplan* references the *possibility* that the defendant *may recommend* that its client proceed with legal action, Defendant's letter explicitly threatens a lawsuit within the thirty (30) dispute and validation period. Consequently Defendant's letter constitutes an express violation of the FDCPA as outlined by the Ninth Circuit in *Terran v. Kaplan*. In fact, the language utilized by Defendant in the subject letter is in direct opposition to the very reasoning the Ninth Circuit employed in finding the letter at issue in *Terran v. Kaplan* compliant: "Here, the request that the alleged debtor immediately telephone a collection assistant does not overshadow the language in the notice that the alleged debtor has thirty days in which to dispute the debt." *Terran v. Kaplan*, 109 F. 3d at 1434. In the instant matter, the least sophisticated consumer is lead to believe nothing other than that Defendant can, and may, file a lawsuit "even if the thirty (30) day dispute and validation periods described below have not expired yet." (See Exhibit A" to Memorandum).

Defendant's direct threat of litigation contradicts the admonition that Plaintiff has thirty days to contest the validity of the subject debt. The letter at issue in the matter at hand not only threatens litigation, but further encourages the least sophisticated consumer to waive his statutory right to challenge the validity of the debt in effort to avoid a previously authorized lawsuit, notably sanctioned by Defendant's client in advance of any potential action taken by Plaintiff in response to Defendant's letter. Indeed, the language employed by Defendant's letter in

attempting to collect the subject debt falls well outside the realm of the letter deemed compliant by the Ninth Circuit in *Terran v. Kaplan*, which, without more, was intended only to "encourage[] the debtor to communicate with the debt collection agency." *Terran v. Kaplan*, 109 F. 3d at 1434.

> **B.      Defendant Fails To Note That The Ninth Circuit's Opinion In *Renick v. Dunn & Bradstreet Receivable Management Services, Inc*. Discusses A Mere "Request For A Prompt Payment," While Defendant's Letter Makes Use Of The Very Language That The Ninth Circuit Makes Known Is Absent In *Renick v. Dunn & Bradstreet Receivable Management Services, Inc*.**

In attempt to convince this Court of the propriety of Defendant's letter mailed to Plaintiff in effort to collect the subject debt, Defendant directly cites to the per curiam opinion in *Renick v. Dunn & Bradstreet Receivable Management Services, Inc.* (See Brief at 4-5), quoting *Renick v. Dunn & Bradstreet Receivable Management Services, Inc*., 290 F. 3d 1055 (9th Cir. 2002) (per curiam). Significant, while citing to *Renick v. Dunn & Bradstreet Receivable Management Services, Inc*. for broad propositions of law, Defendant fails through the entirety of its Brief to call direct attention to the operative facts at issue. The Ninth Circuit did, however, accurately detail the factual history of the matter at issue in *Renick v. Dunn & Bradstreet Receivable Management Services, Inc*:

> Renick didn't pay his phone bill. After his account became seriously past due, Dun & Bradstreet, the phone company's collection agent, sent Renick a collection notice. As required by the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. 1692g(a), the notice informed Renick that he had the right to dispute the validity of the debt within 30 days, and that Dun & Bradstreet would then provide him with verification of the debt.
>
> Twenty days later, Dun & Bradstreet sent a second notice. On the front, it asked Renick to "use the tear-off portion of this letter . . . to send your payment today." The reverse side provided the validation information required by the FDCPA, and stated that "PROMPT PAYMENT IS REQUESTED." The notice also told

> Renick to contact the telephone company with any questions about his phone account, but to direct all inquiries regarding the validity of the debt to Dun & Bradstreet.
>
> Renick sued, alleging that the second notice violated the FDCPA. He argued that, coming only 20 days after the first collection notice, the request for "prompt" payment and payment "today" misled him into abandoning his statutory right to contest the validity of the debt within 30 days from the first notice. Renick also argued that the instruction to call the telephone company with questions about his account was confusing, leaving him uncertain as to whom to contact to verify what he owed. On the basis of his FDCPA claim, Renick also alleged that Dun & Bradstreet violated the California Unfair Business Practices Act. Cal. Bus. & Prof. Code 17200.

*Renick v. Dunn & Bradstreet Receivable Management Services, Inc*., 290 F. 3d at 1056-1057.

Important, the letter at issue in *Renick v. Dunn & Bradstreet Receivable Management Services, Inc.* did not include a single reference to even the *possibility* of legal action. *Id*. The Ninth Circuit in fact noted the language contained within the letter at issue "was in the nature of a request rather than a demand; and carried no sense of urgency." *Renick v. Dunn & Bradstreet Receivable Management Services, Inc.* 290 F. 3d at 1057. Potentially of greater consequence, the Ninth Circuit additionally stated made clear that the letter at issue "did not convey a threat that could induce Renick to 'ignore his right to take 30 days to verify his debt and act immediately.'" *Id*. citing *Swanson v. Southern Orange Credit Serv., Inc*., 869 F. 2d 1222 (9th Cir. 1988). Continuing, the Ninth Circuit explained in defense of the letter at issue that a simple "request for a prompt payment therefore did not contradict the admonition that the debtor has thirty days to contest the validity of the debt" and "did not threaten or encourage the least sophisticated debtor to waive his statutory right to challenge the validity of the debt." *Renick v. Dunn & Bradstreet Receivable Management Services, Inc.* 290 F. 3d at 1057, citing *Terran v. Kaplan*, 109 F. 3d at 1434.

Contrary to the lack of emphasis of language explaining the possibility of legal action included in the letter at issue in *Renick v. Dunn & Bradstreet Receivable Management Services, Inc.*, Defendant's letter to Plaintiff, mailed in effort to collect the subject debt, reads in part: "**If our client instructs us to file suit immediately, we may do so even if the thirty (30) day dispute and validation periods described below have not expired yet**." (See Exhibit "A" to Memorandum). Unquestionably, Defendant's letter takes advantage of the very language for which the Ninth Circuit expressly notes as absent in the letter at issue in *Renick v. Dunn & Bradstreet Receivable Management Services, Inc.*

      C.    **Defendant Fails To Explain That The Northern District Of California In *Palmer v Far West Collection Services, Inc.* Bases Its Opinion Upon The Fact That The Letter At Issue Neither Implied That Immediate Action Was Necessary Nor Directly Referenced Legal Action Absent Payment, While Defendant's Letter Demands Payment And Threatens According Legal Action.**

Defendant asserts through its Brief, by way of reference to *Palmer v. Far West Collection Services, Inc.*, that its letter to Plaintiff, mailed in effort to collect the subject debt, would not have lead the least sophisticated consumer to believe that he had pay the claimed debt before the thirty (30) day dispute and validation period expired. (See Brief at 5). Defendant attempts to demonstrate a lack of violation in likening its correspondence to that discussed by the Northern District of California in *Palmer v. Far West Collection Services, Inc.*

Notably, the Northern District of Californian called attention to the fact that the letter at issue in *Palmer v. Far West Collection Services, Inc.* neither "impl[ies] that immediate action is necessary," nor "threaten[s] legal action absent immediate payment." *Palmer v. Far West Collection Services, Inc.* 348 F. Supp 2d 1070 (N.D. Cal. 2004). The Northern District in fact noted that the letter at issue merely stated: "It is imperative that you remit payment in full to Far West Collection Services, Inc. Failure to do so may necessitate our using other remedies to

collect your dishonored check." *Id*. at 1086. Defendant, contrary to the language employed by the letter at issue in *Palmer v. Far West Collection Services, Inc*., directly references threat a lawsuit *within* the thirty (30) day dispute and validation period. (See Exhibit "A" to Memorandum).

## III. DESPITE DEFENDANT'S PURPORTED "DISCLAIMER" IN ACCORD WITH *GRECO v. TRAUNER, COHEN & THOMAS, L.L.P.*, ADDITIONAL AND SUBSEQUENT LANGUAGE AND STATEMENTS INCLUDED IN DEFENDANT'S LETTER CONFUSE AND CONTRAVENE ANY EFFECT THEREOF.

Defendant includes in its Brief the statement that "Defendant is aware of no legal precedent" that an implication that a letter "was written and reviewed by an attorney, yet expressly stated that no attorney had reviewed plaintiff's account before sending the letter" violates the FDCPA. (See Brief at 8). Indeed, despite Defendant's lack of awareness, attorneys may not sign collection letters on law firm letterhead unless they have personally reviewed the debtor's file. Without more, the combined effect of the signature and the letterhead implies that an attorney has reached a professional judgment that the debt is legally effective. *Clomon v. Jackson,* 988 F. 2d at 1314 (2d Cir. 1994) ("[T]he use of an attorney's signature on a collection letter implies ... that the attorney directly controlled or supervised the process through which the letter was sent."). An attorney who represents that he or she has evaluated the debtor's obligation must actually perform such a review. The hallmark of this review is the use of independent, professional judgment by the attorney. *See Miller v. Wolposs & Abramson, LLP,* 321 F.3d 292, 301 (2d Cir.2003).

Despite its self-proclaimed lack of awareness of the aforementioned legal principle, Defendant nonetheless cites to *Greco v. Trauner, Cohen & Thomas, L.L.P.*, for the proposition that "a letter sent on law firm letterhead, *standing alone*, does not represent a level of attorney

involvement to the debtor receiving the letter." (See Brief at 8) (emphasis in original), citing *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F. 3d 360 (2d Cir. 2005). Defendant, however, fails to take particular notice, or otherwise direct argument, to qualifying statements made by the Second Circuit in *Greco v. Trauner, Cohen & Thomas, L.L.P.* Essential are comments noting that "[t]he letter's representation to the debtor is a consequence of the letter's content and presentation." *Id*. at 365. Possibly more important to the matter at hand, the Second Circuit openly stated, particular to the letter at issue in *Greco v. Trauner, Cohen & Thomas, L.L.P.*, that "[n]othing else in the letter confused or contravened this disclaimer of attorney involvement." *Id*.

In the instant matter, while Defendant includes a single sentence disclaimer explaining that "no attorney with Derrick E. McGavic, P.C. has personally reviewed the particular circumstances of your account," Defendant immediately thereafter includes the statement that "if you do not communicate with this office, the firm's client, Capital One Bank (USA), N.A., may consider judicial remedies to recover the claim from you. (See Exhibit "A" to Memorandum). What's more, shortly thereafter Defendant inserts: "**The law does not require <u>us</u> to wait until the end of the thirty day period before proceeding with suit**." (See Exhibit "A" to Memorandum) (emphasis added). Simply, even should Defendant's purported disclaimer be in accord with that recommended by the Second Circuit in *Greco v. Trauner, Cohen & Thomas, L.L.P.*, Defendant invalidates such a disclaimer with other statements which "confuse[] or contravene[] th[e] disclaimer of attorney involvement." *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F. 3d at 365. Unquestionably, the least sophisticated consumer would take the statement, "[t]he law does not require **us** to wait until the end of the thirty day period before

proceeding with suit," to reference involvement of the attorney from whose law firm the letter was sent.[3]  (See Exhibit "A" to Memorandum) (emphasis added).

As well, considering that this Court must review Defendant's letter against the backdrop of the "least sophisticated consumer" standard, the "consequence of the letter's content and presentation" remains significant.  *Id*.  Simply, Defendant's letter is signed: "Very truly yours, Derrick E. Mc Gavic, P.C."  Indeed, the least sophisticated consumer cannot be held to understand that the suffix "P.C." is any different from the suffix "Esq." or for that matter "M.D."  Relevant, the letter referenced by the Second Circuit in *Greco v. Trauner, Cohen & Thomas* was signed "Very truly yours, Trauner, Cohen & Thomas, LLP."  The instant matter presents a wholly different factual scenario where the very essence of ""Very truly yours, Derrick E. Mc Gavic, P.C." confers upon the least sophisticated consumer a particular level of attorney involvement.  Indeed, "[a]buses by attorney debt collectors are more egregious than those of lay collectors because a consumer reacts with far more duress to an attorney's improper threat of

---

[3] When the "least sophisticated consumer" receives a communication from an attorney proclaiming involvement with the collection of his or her debt, that consumer recognizes that collection letters and phone calls could very soon turn into lawsuits and court orders.  Because of the gravity of influence attorney involvement can have over the "least sophisticated consumer," the FDCPA has forbidden the misleading use of the impression of attorney involvement to coerce payment.  Recognizing the same, Defendant included in its letter to Plaintiff a purported disclaimer noting that "no attorney with Derrick E. Mc Gavic, P.C. has personally reviewed the circumstances of this file."  (See Exhibit "A" to Memorandum).  However, as John Davies famously noted, Defendant cannot eat its cake and have it still.

Should Defendant's disclaimer be taken at face value, no attorney with Derrick E. Mc Gavic, P.C. had personally reviewed the circumstances of Plaintiff's file as of the date Defendant's letter was mailed.  Yet, the truth of such a statement necessarily preludes Defendant from subsequently announcing: "If our client instructs us to file suit immediately, we may do so even if the thirty (30) day dispute and validation periods described above have not expired."  (See Exhibit "A" to Memorandum).  Simply, Defendant, having failed to have an attorney review Plaintiff's file, would have no way to know whether or not "it may file" a lawsuit "immediately."  In other words, without pre-suit investigation, Defendant cannot state that it is aware of its current ability to file a lawsuit. **Thus, should Defendant's "disclaimer" ring true, it is liable to Plaintiff for falsely representing its legal capacity to bring a lawsuit.  Should Defendant's disclaimer strike a false note, Defendant's letter violates the FDCPA's prohibition against suggesting that an attorney has professionally evaluated the debtor's alleged obligations when no such review has occurred.**

legal action than to a debt collection agency committing the same practice." *Crossley v. Lieberman,* 868 F.2d 566 (3d Cir.1989).

WHEREFORE, Plaintiff respectfully requests that this Court enter an order granting Partial Summary Judgment in favor of Plaintiff.

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2009, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following: David A. Jacobs, Luvaas Cobb, 77 High Street, Suite 300, Eugene, Oregon 97401, djacobs@luvaascobb.com.

/s/ Joshua Trigsted
Joshua Trigsted
Weisberg & Meyers, LLC
5025 North Central Ave. #602
Phoenix, AZ 85012
602 445-9819, ext. # 216
866 565 1327 facsimile
Attorney for Plaintiff